IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FRANCISCO J. ORTIZ & CO. INC.,

            Plaintiff,

              v.

MASCO CORPORATION OF INDIANA d/b/a
THE DELTA FAUCET CO.,

            Defendant.

CIVIL NO.   15-1500

## MOTION TO COMPEL ARBITRATION

TO THE HONORABLE COURT:

COMES NOW the Defendant Masco Corporation of Indiana ("MCI" or "Defendant") and, appearing specially, and without waiving any defenses respectfully requests an Order directing that arbitration of Plaintiff Francisco J. Ortiz & Co., Inc.'s ("FJO") claims against Defendant proceed in the city of Indianapolis, Indiana and be administered by the American Arbitration Association pursuant to the arbitration clause in paragraph 18 of the September 22, 2009 Agreement between Plaintiff and The Delta Faucet Company, a division of Masco Corporation of Indiana:

### I.

### INTRODUCTION

This is an action brought by FJO under Law 21 of December 5, 1990, 10 P.R. Laws Ann. §§ 279, *et seq.*, as amended ("Law 21"), claiming damages for the alleged termination without just cause of its purportedly exclusive sales representative relationship with Masco.

FJO agreed to an arbitration clause with MCI which covers the dispute subject of the Complaint. Consequently, in view of the strong public policy in favor of arbitration, FJO should be compelled to arbitrate all of its purported claims and the instant action should be stayed or dismissed without prejudice pending arbitration as provided by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.

**II.**

**STATEMENT OF OPERATIVE FACTS**

1.      On or about September 22, 2009, Francisco J. Ortiz & Co., Inc. and The Delta Faucet Company, which was then an unincorporated division of MCI, entered into an agreement whereby MCI appointed FJO as its independent, non-exclusive correspondent for the sale of certain products identified in Schedule A of the September 22, 2009 Agreement (the "Products"). *See* Exhibit 1, at ¶ 1.

2.      The Products are manufactured in China and in the Continental United States and are shipped to Puerto Rico from the Continental United States.

3.      Under the September 22, 2009 Agreement, FJO had the authority to solicit orders for the Products for delivery to destinations within Puerto Rico.  *See* Exhibit 1, at ¶ 2.

4.      Section 18 of the Agreement provided that:

> This Agreement and the rights, duties and obligations of the parties shall be construed and enforced in accordance with and governed by the law of the State of Indiana, without giving effect to conflicts of laws. **Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be determined by arbitration administered by the International Center for Dispute Resolution of the American Arbitration Association in accordance with its International Arbitration Rules.** The number of arbitrators shall be three (3). The place of arbitration shall be in the city of Indianapolis, Indiana, USA. The language of the arbitration shall be in English. The arbitrators shall issue a reasoned award, and it shall be final and binding upon the parties and not subject to further appeal. The arbitrators shall be empowered to award money damages but may not award consequential, incidental, exemplary or punitive damages or order specific performance.

*See* Exhibit 1 at 8-9, ¶ 18 (emphasis added).

5.      On September 3, 2014, Defendant sent a letter to FJO notifying that, pursuant to Paragraph 14(a) of the Agreement, it was exercising its right to terminate FJO's services and the Agreement, effective ninety (90) days after the date of the letter.  *See* Exhibit 2.

6.      On March 3, 2015, FJO initiated the instant litigation by filing a complaint for damages before the Puerto Rico Court of First Instance, Carolina Superior Part.  *See* Docket 1-2.

7.     On April 28, 2015, MCI removed the captioned case to this Honorable Court.  *See*

Docket 1.

### III.

### ARGUMENT

**Plaintiff is in Default of the September 22, 2009 Agreement's Arbitration Clause and, Pursuant to Said Clause, Should be Compelled to Arbitrate the Claims Made in the Complaint:**

FJO's claims are squarely within the scope of the mandatory arbitration clause in paragraph

18 of the September 22, 2009 Agreement.  Consequently, FJO breached said clause by filing

instant action.  This Honorable Court should therefore issue an order compelling FJO to arbitrate

its claims dismiss this action without prejudice pending the outcome of arbitration.

**1.  Applicable Law:**

The FAA, 9 U.S.C. § 2, provides:

> A written provision in any maritime transaction or **a contract evidencing a transaction involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.

(Emphasis added).   The U.S. Supreme Court has stated that section 2 of the FAA "is a

congressional  declaration  of  a  liberal  federal  policy  favoring  arbitration  agreements,

notwithstanding any state substantive or procedural policies to the contrary. The effect of the

section is to create a body of federal substantive law of arbitrability, applicable to any arbitration

agreement within the coverage of the Act."   Moses H. Cone Memorial Hospital v. Mercury Const.

Corp., 460 U.S. 1, 24 (1983).

The word "involving" in section 2 of the FAA —which mandates that contracts evidencing a

transaction involving commerce shall be enforceable— should be interpreted broadly and is the

functional  equivalent  of  "affecting  commerce."    *See* Allied-Bruce  Terminix  Companies,  Inc.  v.

Dobson, 513 U.S. 265, 273-274 (1995).  *See also* Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56

(2002) ("We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").  According to the U.S. Supreme Court, "a broad interpretation of this language is consistent with the Act's basic purpose, to put arbitration provisions on "'the same footing'" as a contract's other terms."  Allied-Bruce, 513 U.S. at 274 (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)).

"Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'-that is, 'within the flow of interstate commerce'."  Citizens Bank, 539 U.S. at 56 (citations omitted).  Accordingly, "[f]ederal law mandates the rigorous enforcement of arbitration agreements."  Colon de Sanchez v. Morgan Stanley Dean Witter, 376 F.Supp.2d 132, 135 (D.P.R. 2005); KKW Enter., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42, 49 (1st Cir. 1999).

Faced with a motion to compel arbitration, courts must determine whether the dispute at hand falls within the scope of the arbitration clause.  Medika International, Inc. v. Scanlan Intern, Inc., 830 F. Supp. 81, 84 (D.P.R. 1993); Cardona Tirado v. Shearson Lehman American Express, Inc., 634 F. Supp. 158, 159 (D.P.R. 1986).  In making this determination, the court will not examine the merits of the allegations. Medika International, 830 F. Supp. at 85 (citing Warren Bros. Co. v. Cardi Corp., 471 F.2d 1304, 1307 (1st Cir. 1973); Peerless Pressed Metal Corp. v. International Union of Electrical, 451 F.2d 19, 20 (1st Cir. 1971)).

Given the established "liberal federal policy favoring arbitration agreements," Moses H. Cone, 460 U.S. at 24, "as a matter of federal law, **any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability**." Id. at 24-25 (emphasis added).  Indeed, it is well-settled that questions of arbitrability must be dealt with a high regard for the federal policy in favor of arbitration, and any

4

doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. Colon de Sanchez, 376 F.Supp.2d at 135; Carro v. Parade of Toys, Inc., 950 F. Supp. 449, 451-452 (D.P.R. 1996); Cardona Tirado v. Shearson Lehman American Exp., Inc., 634 F. Supp. 158, 159 (D.P.R. 1986).

Moreover, Section 3 of the FAA in turn provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Where a contract contains a broad arbitration clause, the issue of enforceability of the contract's choice of law clause is itself subject to arbitration. *See* Medika International, 830 F. Supp. at 87. *See also* Diagnostic Imaging Supplies & Servs., Inc. v. GE, 2006 U.S. Dist. LEXIS 50792 (D.P.R. July 24, 2006) (holding that "under the FAA when an agreement contains arbitration and choice of law clauses, the determination of what law applies to the agreement is one that falls within the scope of the agreement and should be made by the arbitrator rather than the courts.").

Finally, "Section 3 of the FAA requires the Court to stay the proceedings "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3. The Court may dismiss the case, however, 'when all of the issues before the court are arbitrable'." Ponce Roofing, Inc. v. Roumel Corp., 190 F.2d 264, 266 (D.P.R. 2002) (*quoting* Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 n. 21 (1st Cir.1998); Sea–Land Serv., Inc. v. Sea–Land of Puerto Rico, Inc., 636 F.Supp. 750, 757 (D.P.R.1986)).   In this case, dismissal, rather than a stay, is appropriate because all of FJO's claims are completely encompassed by the arbitration clause. *See* Ideal Limited Services Corp. v. Swift-Eckrich, Inc., 727 F. Supp. at 78 (finding dismissal without prejudice appropriate when all issues presented in the complaint are arbitrable) (*quoting* Sea–Land Services, Inc. v. Sea–Land of P.R., Inc., 636 F. Supp. 750, 757-758 (D.P.R. 1986)

("Given our ruling that all issues raised in this action are arbitrable, retaining jurisdiction and staying the action will serve no purpose.").

### 2.  Discussion

The dispute underlying the instant action is within the scope of the arbitration clause contained in the September 22, 2009 Agreement.  Consequently, this case was filed in violation of a mandatory arbitration clause and Plaintiff should be compelled to arbitrate its claims.

As a threshold matter, it must be noted that the commercial relationship between the parties involves interstate commerce and thus the FAA applies.  Defendant is an Indiana corporation.  The Products covered by the September 22, 2009 Agreement are not manufactured in Puerto Rico, but rather are shipped to Puerto Rico from the Continental United States.  These facts satisfy the FAA's interstate commerce requirement.  *See* Allied-Bruce, 513 U.S. at 282 (holding that the contract at issue involved interstate commerce because, in addition to the multistate nature of the parties, the material used in carrying out the terms of the contract, came from another state).  *See also* Ideal Limited Services Corp. v. Swift-Eckrich, Inc., 727 F. Supp. 75, 77 (D.P.R. 1989) (holding that a contract for the warehousing and import of U.S. products into Puerto Rico involved interstate commerce under section 2 of the FAA and, thus, claims were subject to arbitration).  We now turn to the scope of the September 22, 2009 Agreement's arbitration clause.

Here, the language of the referenced clause is broad and covers all of FJO's purported claims.  "Broad arbitration clauses contain language submitting to arbitration all disputes 'arising under' or 'relating to' an agreement." Carro, 950 F. Supp. at 452.  As quoted above, the arbitration clause states that "**[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof**, shall be determined by arbitration administered by the International Center for Dispute Resolution of the American Arbitration Association in accordance with its International Arbitration Rules."  Exhibit 1 at 8-9, ¶ 18 (emphasis added).  Thus, because FJO alleges that MCI breached the representation agreement, the present controversy "shall be determined by arbitration."

6

Plaintiff argues that the referenced arbitration and choice of law clause is "null *ab initio*, pursuant to statutory provision, 10 LPRA 279(f) … [and, as a result] this claim .. must be adjudicated in Puerto Rico, pursuant to the laws of Puerto Rico." *See* Docket 1-2, at ¶ 10. However, the U.S. Supreme Court has held that the FAA preempts **any** state statutory prohibitions which conflicts with the goals and policies of the FAA. *See* Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 623, n. 10 (1985) (directing arbitration of Antitrust and Law 75 claims in Japan pursuant to valid and enforceable forum selection clause). *See also* Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Accordingly, the First Circuit held that a company's Law 21 claim was required to be arbitrated in Kentucky pursuant to a mandatory arbitration clause contained in the parties' agreement. *See* IOM Corp. v. Brown Forman Corp., 627 F.3d 440 (1st Cir. 2010).

Moreover, this Court and the Puerto Rico Supreme Court have repeatedly held that Law 75 claims, which are analogous to those brought by FJO pursuant to Law 21,[1] are indeed subject to arbitration if the agreement at issue has a general arbitration clause. *See* Banks Channel, LLC v. Brands, 796 F. Supp. 2d 294, 295-296 (2011) (holding that claims under Law 75 are arbitrable under a general arbitration clause); World Films, Inc. v. Paramount Pictures Corporation, 125 D.P.R. 352, 354 (1990) (holding that the application of section 3B of Law 75 was in conflict with the FAA and thus plaintiff must submit to arbitration under the terms of their arbitration agreement which provided that California law governed.). Such agreements to arbitrate shall be enforced even if the contract provides for arbitration outside of Puerto Rico. World Films, Inc., 125 D.P.R. at 354. *See also* D.I.P.R. Mfg., Inc. v. Perry Ellis Intern., Inc., 472 F.Supp.2d 151, 155 (2007) (upholding forum selection clause in Law 75 dealership dispute and collecting cases from this

---

[1] "Law 75" is the Puerto Rico Dealer's Act of 1964. "[I]t is generally accepted that jurisprudence applicable to Law 75 applies to Law 21 as well." Nor-Dec v. Viracon, 781 F.Supp.2d 38, 46 (D.P.R. 2010); "Because Law 21 is modeled after the Dealer's Contract Law, it is well settled that jurisprudence applicable to Law 75 is also of application in controversies which fall under Law 21." IOM Corp. v. Brown-Forman Corp., 553 F.Supp.2d 58, 64 n. 9 (D.P.R. 2007).

district with same holding); <u>Diagnostic Imaging Supplies and Services, Inc. v. General Electric Company</u>, No. 04-2368; 2006 WL 2077032, at *4 (July 26, 2004) ("the existence of Law 75 does not displace the FAA and bring the choice of law issue into the purview of this Court."); <u>Banks Channel, LLC,</u> 796 F. Supp. 2d, at 297 ("Arbitration clause requiring that disputes and claims arising out of parties' agreement be settled through binding arbitration in Barbados was enforceable."). Thus, even if *arguendo* Puerto Rico law were to apply to the dispute concerning the termination of the representation agreement, the September 22, 2009 Agreement and the FAA require that such dispute must be resolved in arbitration.

Likewise, FJO's allegation that it signed the September 22, 2009 Agreement due to pressure by MCI must be resolved in arbitration. *See* Docket 1-2, at ¶ 7. The reasons are the broad language of the September 22, 2009 Agreement's arbitration clause which covers *"[a]ny controversy or claim arising out of or relating to"* said agreement and the fact that the allegation is not directed at the arbitration clause specifically but rather at the September 22, 2009 Agreement as a whole. See <u>Dialysis Access Center, LLC v. RMS Lifeline, Inc.</u>, 638 F.3d 367 (1st Cir. 2011)(Because appellants had only challenged the validity of the managed service agreement, the arbitration clause was severable from the rest of the agreement and considered valid, irrevocable and enforceable under Section 2 of the FAA); <u>Farnsworth v. Towboat Nantucket Sound, Inc.</u>, 36 F. Supp. 2d 247 (D. Mass 2014)(Arbitrators acted within their authority in resolving allegations of duress directed at salvage contract and not at the arbitration clause within the contract).

In short, it is beyond cavil that, in bringing the instant action for damages, FJO initiated legal action on issues that were within the scope of the arbitration clause in the September 22, 2009 Agreement. Since all issues raised in this action must be referred to arbitration pursuant to the Agreement, the action should be dismissed pursuant to Section 3 of the FAA.

WHEREFORE, Masco Corporation of Indiana respectfully requests, pursuant to Section 4 of the Federal Arbitration Act, that this Court enter an Order directing that arbitration proceed in the city of Indianapolis, Indiana and be administered by the American Arbitration Association as

provided for in the Agreement's arbitration clause with respect to all claims alleged in the Complaint and that, accordingly, the case be dismissed without prejudice.

RESPECTFULLY SUBMITTED.

WE HEREBY CERTIFY that on this same date a true and exact copy of this document has been served by mail upon A. J. Bennazar-Zequeira (counsel of record for Plaintiff in the Puerto Rico Court of First Instance, Carolina Superior Part) at his postal address P.O. Box 194000 No. 212, San Juan, Puerto Rico 00919-4000 and by e-mail at ajb@bennazar.org.

In San Juan, Puerto Rico this 28th day of April, 2015.

McCONNELL VALDÉS LLC
Attorneys for Defendant
Masco Corporation of Indiana
270 Muñoz Rivera Ave.
Hato Rey, PR  00918
P.O. Box 364225
San Juan, PR  00936-4225
Tel. (787) 250-2604
Fax. (787) 759-2772


By:          *s/ Raúl M. Arias*
Raúl M. Arias
USDC-PR No. 209706
rma@mcvpr.com


*s/ Sonia M. López-del Valle*
Sonia M. López-del Valle
USDC-PR No. 231413
sld@mcvpr.com