

## Delta Faucet Representation Agreement

Representative:      **Francisco J. Ortiz & Co., Inc.**

    ()      A _____ Corporation, in which case Schedule C is incorporated herein.

    ()      A co-partnership consisting of_____ in, which case Schedule C is incorporated herein.

    ()      An individual doing business as_____.

Representative's business address:   **Charlyn Industrial Park**
**Carolina, PR  00983**

Territory for Products listed on Schedule A:      **Puerto Rico**

Market Classifications:      **General Plumbing Industry**

    1.      All plumbing wholesalers, plumbing wholesaler showrooms, wholesale specialty and hardware supply distributors, and secondary market customers, including but not limited to, residential builders, commercial developers, plumbing contractors, mechanical contractors, engineers, architects, designers and other trade side businesses as identified by the Company.

    2.      United States Co-op members from Do-it-Best, Orgill, Ace and Tru Serv

    3.      OEM accounts may be solicited and special faucet configurations, styles and finishes may be considered, but written approval from your Sales Director or Vice-President, Sales for the Company must be received before soliciting any such account.

    This Representation Agreement ("Agreement") is made as of **1** day of **April, 2009** ("Effective Date") between Representative and The Delta Faucet Company, a division of Masco

#137788v23

Corporation of Indiana, an Indiana corporation, (the "Company"). Whereas, the parties mutually agree to extinguish all prior agreements between the parties, including, without limitation, their existing Representation Agreement and mutually desire to enter into this Agreement pursuant to the terms and conditions set forth herein. Now, therefore, in consideration of their mutual undertakings and for good and valuable consideration, the parties agree as follows:

1. The Company appoints the Representative (and the Representative accepts such appointment) as the Company's independent, non-exclusive sales correspondent for customers in the Market Classifications and located within the Territory (the "Customers"), and upon the terms and conditions contained herein, for the solicitation of orders for products (the "Products") of the Company listed on Schedule A attached hereto, which list the Company may modify from time to time in its discretion upon notice, for the period beginning on the date hereof and ending on the Termination Date as provided in Paragraph 14 (the "Representation Period"). <u>The Company reserves the right, at its sole discretion, to appoint additional sales representatives, distributors, sub-distributors or agents to sell and promote its Products in the Territory.</u> The Company shall have no obligation to provide, and the parties do not expect the Company to provide, any training to the Representative or any of its employees.

2. The sole authority granted to the Representative is to solicit orders for the Products from the Customers for delivery to destinations within the Territory as provided herein, and the Representative shall not have, nor shall it hold itself out as having, the power to make contracts or to assume any liability or obligation in the name of or binding on the Company, to pledge the Company's credit or to extend credit in its name. The Representative shall not be obligated, and the parties do not expect the Representative, to perform any of its obligations and duties hereunder in any particular order or by any particular means; provided that the Representative shall not breach any of the terms or conditions of this Agreement.

3. During the Representation Period, the Representative shall solicit orders for the Products from the Customers at the prices furnished to the Representative or the Customers by the Company from time to time, and upon the standard terms and conditions of quotation or sale specified from time to time by the Company. Prices are subject to change without notice, liability or obligation.

4. All orders shall be subject to acceptance by a duly authorized employee of the Company. All decisions regarding credit and all billings and shipments shall be made only by the Company, which reserves the right in its sole discretion to decline to accept any order for or offer to purchase the Products, to discontinue the sale of any product, or to allocate the supply of Products during periods of shortages, without notice and without incurring any liability or obligation to the Representative. The Company may cancel or rescind any contract, order, agreement or account, in whole or in part at any time after acceptance, without incurring any liability or obligation to the Representative for the payment of commissions or otherwise.

5. (a) Subject to Paragraphs 6, 7, 8 and 14 during the Representation Period the Company will pay, and the Representative shall accept in full satisfaction of any and all rights to

2

compensation from, and/or claims against, the Company of any kind or nature whatsoever, commissions on the Net Selling Price (as defined in Section 5(b)) at the rates set forth on Schedule A hereto (as such schedule may be modified from time to time as the Company, in its sole discretion, shall deem appropriate), on non-canceled Customer orders received from the Representative and accepted by the Company for Products shipped to destinations within the Territory. No change in the commission rate shall be effective until thirty (30) days have elapsed from the date the Company shall announce such rate change. The commission rate in effect on the date the goods are shipped to the Customer shall be the applicable rate with respect to such shipment, notwithstanding that the order shall have been transmitted or accepted at a time in which a different commission rate may have been in effect.

(b) During the Representation Period, commissions shall be paid upon the "Net Selling Price," being defined herein for all purposes as the net price received by the Company before deductions for cash discounts, but after deductions for volume incentive purchase, meeting competition or promotional discounts provided to the customer and, after thirty (30) days prior written notice to Representative, any other deduction that Company deems appropriate in its discretion. Commissions shall be payable on or before the 20th day of the month following the month in which invoices shall be dated.

(c) If a Customer maintains a distribution center ("Center") outside the Territory and the Company ships Product to such Center pursuant to a Customer order received from the Representative and originating in the Territory, commissions shall not be payable on such order unless and until the Company receives written confirmation from the Customer that it shipped the Products for such order into the Territory. Commissions on such orders shall be payable on or before the 20th day of the month following the date of the Company's receipt of such written confirmation.

(d) The Company may debit the commission account of the Representative for commissions paid to the Representative on any Product returns and for any adjustments (for payments or allowances by the Company to its direct or indirect customers), refunds, settlement of claims between the Company and its direct or indirect customers, collection costs, allowances and other like costs that are deemed reasonable by the Company. In the event that any Customer has not paid any invoice within the period provided in such invoice, or if in the sole judgment of the Company any such account or portion thereof shall become uncollectible, on demand by the Company the Representative shall refund all commissions paid on the unpaid balance of such account, or the Company may debit the commission account of the Representative for such commission; provided, however, that if within three years thereafter such account or any balance thereof is collected in whole or in part by the Company, the commission so refunded or debited shall be repaid to the Representative proportional to the extent of the balance (less collection costs) so collected. The right of the Company to recover such commissions shall survive termination of this Agreement.

(e) In addition to its right to adjust commission rates under clause (a) above, the Company reserves the right to reduce or adjust commissions to such rate as in its sole discretion

it shall deem equitable on orders accepted for special and/or promotional considerations, or under other unusual circumstances.

(f) During the Representation, no commissions shall be paid on orders received and accepted by the Company from any "in house accounts" (including those, which in the past have not been subject to commissions) or other Customers referred to in Paragraph 7 below.

6. Subject to Paragraph 7 below, commissions during the Representation Period will be paid on shipments of Products to destinations within the Territory or to Centers (as set forth in Paragraph 5(c) above) pursuant to Customer orders received from the Representative and originating in the Territory; however, questions may arise as to the person entitled to commissions or whether commissions are equitably payable under various circumstances such as where an order originates outside the Territory specifying shipments into the Territory, or vice versa. Therefore, the Company shall have the sole right to determine whether any commission and the amount thereof, if any, shall become due or owing to the Representative on such orders, and the decision of the Company in such cases shall be final and without recourse.

7. Both parties recognize that there are Customers whose purchases of Products may require specialized services which can be provided more adequately or efficiently by the Company's own organization, or there may exist other circumstances which in the Company's judgment require that an account be serviced directly. It is accordingly understood that from time to time the Company shall be entitled to designate a Customer as an "in house account" or to advise the Representative in writing of the extent to which such Customer or any of the Products are to be serviced or sold directly by the Company, and upon receipt of such advice, the Representative shall not solicit or take orders on behalf of the Company for the sale of the Products to such Customers. The judgment of the Company upon such matters shall be in its sole discretion and shall be final and without recourse.

8. (a) During the Representation Period, the Representative shall devote such time and effort as may be necessary to properly represent the Company in the sale of the Products including the rendering of those services which in the Company's judgment may be necessary to properly service the Products, Customers and Territory. At all times during the Representation Period, the Representative will employ not less than two full time sales people for the retail/showroom and construction project sales functions. In addition, the Representative shall meet or exceed any performance criteria, including without limitation, sales goals, concerning the Products established by the Company from time to time in its reasonable discretion. Not less than 60 days' prior to the commencement of each year during the Representation Period (or as soon as practical for the first year of the Representation Period), the Company and the Representative will develop an annual sales plan ("Annual Business Plan"), for the Representative's sales of Products in the Territory. For each month during the Representation Period, the Representative will submit a sales report comparing monthly sales to projected sales as set forth in the Annual Business Plan, together with commentary as to any deviations and any new initiatives to increase sales. The Representative's services shall include

active promotion and efficient marketing of the Products through use of, <u>inter alia</u>, appropriate trainers, plumbers, sales personnel and seminars.

(b)     The Representative has previously supplied the Company with a list of names of all other principals which it represents and a description of the products sold and territories covered, which list of Other Principals and Products Represented is attached as Schedule B hereto. During the Representation Period, the Representative agrees that it will promptly notify the Company's applicable Sales Director and/or Vice-President, Sales in writing of the proposed addition of any principals or products to such list or extensions of territories; provided, however, such notice shall be provided no later than thirty (30) calendar days after Representative's first substantive communication with the principal or third party on the proposed addition or extension. Prior to making any such additions or extensions, Representative shall obtain the written consent of the Company, which consent may be provided only by the Company's Vice-President, Sales or Sales Director and which consent the Company may grant or not in its sole discretion. The Company shall endeavor to notify the Representative of its decision within seven (7) calendar days of receiving such notice; provided, however, the Company's failure to provide a response within such seven-day period shall be deemed to be a denial of such consent. If Company provides such consent, Exhibit B will be amended by the Company accordingly. The parties will review Exhibit B at least once a calendar year.

(c)     During the Representation Period, without the prior written consent of the Company, the Representative shall not (and shall cause each affiliate of the Representative, each of its shareholders, owners, partners, directors, officers, employees, agents, representatives, and contractors of the Representative, and each individual signatory ("Signatory") to the Undertaking set forth on Schedule C (collectively, the "Representative Parties") not to), directly or indirectly, (i) sell, offer for sale, promote, advertise, market, merchandise, or solicit orders for sale (such activities collectively hereinafter referred to as "Represent" or "Representing") products that are or may be competitive with any of the Products or any product of any affiliate of the Company ("Competitive Products") or (ii) accept compensation of any kind or nature whatsoever from any person or entity providing or engaging in the sale of Competitive Products. The Company shall have sole discretion in determining what constitutes a Competitive Product. The list of Competitive Products currently approved by the Company is set forth on Schedule D. The Representative or the Representative Party, as applicable, shall promptly notify the Company's applicable Sales Director and/or Vice-President, Sales in writing of its substantive communication with a principal or third party of it Representing any Competitive Product; provided, however, such notice shall be provided no later than thirty (30) calendar days after Representative's first substantive communication with the principal or third party concerning such representation. Prior to entering into any such relationship, the Representative or the Representative Party, as applicable, shall obtain the written consent of the Company, which consent may be provided only by the only by the Company's Vice-President, Sales or Sales Director and which consent the Company may grant or not in its sole discretion. The Company shall endeavor to notify the Representative or Representative Party, as applicable, of its decision within seven (7) calendar days of receiving such notice; provided, however, the Company's failure to provide a response within such seven-day period shall be deemed to be a denial of such

consent. If the Company provides such consent, Exhibit D will be amended by the Company accordingly. The parties will review Exhibit D at least once every six (6) months.

9. The Representative also agrees that it will promptly (but not longer than thirty (30) calendar days) notify the Company in writing (a) of the discharge or hiring of sales personnel; (b) of any affiliation whether formal or informal, direct or indirect, with any other sales organization; (c) of any change in its shareholders, owners, partners, directors, or officers; or (d) if it ceases to represent any principal, product, or territory identified on either Exhibit B or Exhibit D (as such exhibits may be amended) hereto.

10. The Representative and its shareholders, owners, partners, directors, officers, employees, agents, representatives, and contractors shall not be considered, directly or indirectly, employees of the Company. Any taxes or contributions levied by any federal, state or local law based upon payroll of or employment by Representative shall be paid by and shall be the sole liability of the Representative.

11. The Representative shall indemnify the Company, its affiliates and each of the past, current or future directors, officers, employees, agents and representatives of the Company or any of its affiliates and hold it and them harmless from and against all claims, losses, expenses and liabilities arising out of damage to property or injury to or death of persons, including the Representative and employees, representatives, or contractors of the Representative, occasioned by or in connection with acts or omissions of the Representative or its employees, representatives, or contractors or in connection with conduct of the Representative's business, or the use of any motor vehicle or other equipment or property in connection with the conduct of the Representative's business. The obligations of this Paragraph 11 shall be deemed continuous and shall survive any termination of this Agreement.

12. The Representative shall pay all of its own expenses including the compensation of its employees, representatives, agents, or contractors and the sole compensation to which it shall be entitled shall be the commissions provided by the terms hereof. From time to time, the Company may provide samples of the Products to the Representative. The Company shall bill the Representative for any sample which is not returned to the Company upon request and which has not been accounted for. The quality and type of sample so supplied to the Representative shall be determined by the Company in its sole discretion as shall the terms of payment thereof should the sample be retained and unaccounted for.

13. The parties agree that their relationship during the Representation Period is strictly limited to that of principal and agent, subject to the limitations of the agent's authority as contained in this Agreement. They further acknowledge that (a) the parties have no common interest in the Products except to the extent that the Representative may earn commissions in accordance with the terms of this Agreement, (b) there is no intent to create a franchise or dealership in the sale of the Products, (c) no further investment of capital is expected of the Representative, (d) the Representative is not granted the right to use the Company's trademarks, trade names, service marks, logotypes, advertising or other commercial symbols except as the

Company's agent and (e) Representative has not paid a fee or other consideration to the Company or any designee of the Company for the right to enter into this agreement or continue the parties' relationship. If during the term of this Agreement any such rights should become vested in the Representative by operation of law or otherwise, the Representative agrees that he will, on the Company's request, or on termination of this Agreement, forthwith assign any and all such rights, together with any goodwill appurtenant thereto, to the Company.

14. The Representation Period shall be and continue in full force and effect unless and until terminated by either party hereto. Such termination shall be in the manner and under the conditions set forth in this Paragraph.

(a) Either party shall have the absolute discretionary right to terminate the Representation Period, with or without cause or reason, by giving prior written notice of such termination of at least ninety (90) calendar days prior to the effective date of termination (the "Termination Date").

(b) The Company shall have the right to terminate the Representation Period effective immediately by giving written notice to the Representative that termination is made for cause. Such written notice may set forth that the termination is for cause, but need not specify the facts constituting cause. Situations which shall entitle the Company to terminate the Representation Period for cause shall include any and all breaches of this Agreement, or any other agreement between the parties, unethical business practices, engaging in conduct which in the Company's sole judgment creates a conflict of interest, misconduct or any other acts or omissions on the part of the Representative which in the Company's sole judgment may be detrimental to the Company's business or reputation or the reputation of any of the Products or other Products of the Company or any breach by any Signatory of clause (iii) of the Undertaking set forth on Schedule C hereto or by any Representative Party of any obligation set forth in paragraph 8(c) above. The Termination Date of a termination for cause shall be the date of mailing of the notice of termination.

(c) Upon a termination of the Representation Period pursuant to clause (a) above, the Representative shall receive commissions only on all bona fide non-canceled Customer orders received and accepted by the Company prior to the close of business on the Termination Date for Products shipped within thirty days after the Termination Date.

(d) Upon a termination of the Representation Period for cause, the Representative shall receive commissions only on bona fide non-canceled Customer orders received and accepted by the Company for Products shipped prior to the close of business on the Termination Date. The Representative shall not in any case be entitled to any commission whatsoever on any order, shipment of which is made after the Termination Date.

(e) It is understood and agreed that any commissions paid in accordance with this Paragraph 14 shall be in full satisfaction of any and all of its rights to compensation from and/or its claims against the Company of any kind or nature whatsoever arising from or relating to this

Agreement and shall be subject to the limitations and conditions set forth in Paragraphs 4, 5, 6 and 7 except that commissions shall be payable to the Representative on or before the 20th day of the month following the month in which full payment is received by the Company from the customer.

(f) In all events the Company may withhold such sum from commissions payable to the Representative as in its sole discretion shall be required to hold it harmless against loss due to the return of any Product samples delivered to the Representative or any indebtedness or liability of the Representative to the Company.

15. Upon termination of the Representation Period in any manner and for any cause, the following provisions shall take effect:

(a) The Representative shall immediately discontinue the use of the Company's name and any variation thereof. The Representative shall immediately return to the Company all Product samples, business cards, customer information, sales literature, order blanks and other business and promotional materials and any other property of the Company which may be in the Representative's possession or under his control at the Termination Date.

(b) Except for the right to post-Representation Period termination commissions under Paragraph 14, all other rights granted to the Representative shall cease.

16. Upon termination of the Representation Period by the Representative or the Company under Paragraph 14(a) or by the Company under Paragraph 14(b), for a reasonable time, not to exceed thirty (30) days, after the Termination Date the Representative shall render assistance to and cooperate with the Company or such sales representative as may be designated by the Company, in order to facilitate the continued service of the Territory and the Customers and minimize disruption of sales efforts during the transition period.

17. This Agreement is not assignable by the Representative. If the Representative's business shall be sold, merged into or consolidated with another corporation whereby the contracting entity shall not survive such merger or consolidation, or if there shall be any change in the persons or status of partners, principal officers, or stockholders of the Representative, any Signatory or any salesperson or employee of the Representative identified by the Company in writing from time to time, or, in the event of the death of a Representative who is an individual, this Agreement may be terminated by the Company in its entirety immediately or at any time after the occurrence of such event by written notice as provided in Paragraph 14(b) and with like effect.

18. This Agreement and the rights, duties and obligations of the parties shall be construed and enforced in accordance with and governed by the law of the State of Indiana, without giving effect to conflicts of laws. <u>Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be determined by arbitration administered by the International Center for Dispute Resolution of the American Arbitration Association, in</u>

8

<u>accordance with its International Arbitration Rules. The number of arbitrators shall be three (3). The place of arbitration shall be in the city of Indianapolis, Indiana, USA. The language of the arbitration shall be in English. The arbitrators shall issue a reasoned award, and it shall be final and binding upon the parties and not subject to further appeal. The arbitrators shall be empowered to award money damages but may not award consequential, incidental, exemplary or punitive damages or order specific performance</u>.

19.     The terms and conditions of this Agreement supersede any and all previous Agreements between the parties, whether oral or written, including any rights of Representative there under. The parties agree that the terms hereof comprise the entire Agreement between them.

20.     It is agreed that notices provided for in this Agreement may be made by facsimile or first class mail provided that the same are addressed to the party required to be notified at the addresses first mentioned above, to the attention of Company's Vice-President, Sales in the case of notices to the Company and to the attention of the undersigned in the case of notices to the Representative and/or Signatories or notices may be sent to such other addresses and to the attention of such other persons as may be hereinafter designated in writing by the party to be notified. Notices shall be considered to be delivered on the date the same are deposited in the United States mail, postage prepaid, in accordance with the provisions hereof.

21.     The Representative agrees that the non-competition obligations set forth in Paragraph 8(c) and in clause (iii) of the Undertaking are no greater than are reasonably necessary to preserve and protect the Company's goodwill and other legitimate business interests and that they will cause the Representative, any Representative Party, or Signatory no undue hardship. The Representative also agrees that any violation or threatened violation of such provisions will cause the Company immediate irreparable harm for which injunctive relief will be necessary. Accordingly, the Company may, in addition to pursuing any other rights or remedies, obtain such equitable and injunctive relief (including, but not limited to, temporary and preliminary injunctive) from any court of competent jurisdiction as may be necessary or desirable to enjoin any such violation or threatened violation or to enforce any of the Company's rights or remedies with respect thereto. No bond or other security shall be required to obtain such relief.

I (we) agree to the above.

_____
*[signature]*
Vice - Pres.

_____

Date: 8/31/09

Representative*

Revision Date:

The Delta Faucet Company, a division of Masco Corporation of Indiana

By: *Richard O'Reagan*

Its: VP, Sales

Date: Sept 22 2009

*If Representative is a partnership or corporation, please state the capacity of the person signing for the Representative.

10

## SCHEDULE A
### Products and Commission Rates

| | |
|---|---|
| Delta Faucets | 5.0% |
| Peerless Faucets – Trade Only | 5.0% |
| Delta Commercial Faucets | 5.0 % |
| Brizo Faucets and Accessories | 5.0% |
| All Repair and Replacement Parts and Accessories | 5.0% |
| Sales to US co-op members from Do it Best, Orgill, Ace and True Value | 4.0% |

Please note that these commission rates represent default rates. Actual commission rates may vary and be adjusted by customer "sold-to" account number for special circumstances.

Please note that the Commission Rates are applied to Net Selling Price, which is defined in Paragraph 5(b) of the Agreement.

11

## SCHEDULE B
### Other Principals and Products Represented

| Name | Product Line | Territory | Date of Hire |
|---|---|---|---|
| IMCOA | Insulation | Puerto Rico | 1991 |
| Watts Drainage | Drainages | Puerto Rico | 1995 |
| Watts Regulator Co. | Regulators | Puerto Rico | 1994 |
| Watts ACUV | Water Conditioning Control Valves | Puerto Rico | 1996 |
| Liberty Hardware | Bath Accessories | Puerto Rico | 2007 |

## SCHEDULE C
### Undertaking

The undersigned, being a majority of the shareholders or all of the partners (whichever is applicable) of the Representative, in consideration of their resulting interest in the payments to be made to the Representative under the Agreement and for other good and valuable consideration, receipt and sufficiency is hereby acknowledged, hereby agree (i) to use their best efforts to cause the Representative to perform all obligations undertaken by the Representative herein, (ii) individually to the provisions of the above Paragraph 8(b), and (iii) not to engage in any activity individually or with others which the Representative is not then permitted to undertake by Paragraph 8(b) (other than as an investor in less than 1% of the outstanding capital stock of a publicly traded corporation).

| Name | Ownership/Position | Signature | Date |
|------|--------------------|-----------|------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

SCHEDULE D
Competitive Products Represented by the Representative Approved by the Company